Our first case for this morning will be Refined Metals Corporation v. NL Industries. Mr. Collings. May it please the Court. My name is Robert Collings. I am counsel for the appellant plaintiff below Refined Metals. NL, the defendant appellee, built a lead smelter facility and operated it from 1968 until late in 1979. Refined Metals acquired the facility in 1980, at which time new regulations of EPA were adopted requiring Refined Metals to file for a permit and give notice that it would be subject to new regulations of the Resource Conservation and Recovery Act, RCRA. When prospective regulatory and statutory requirements went into effect, Refined was the owner and operator and remained the sole owner-operator during the entire period of operation. Other statutes have been adopted that also govern environmental control and remediation, including CERCLA and other provisions of the Resource Conservation and Recovery Act. These provide broader scopes of liability to broader categories of parties. But the claims brought by the United States in 1990 and addressed in the 1998 RCRA consent decree were solely claims against Refined as the owner-operator of the facility. The consent decree contains a covenant not to sue, which specifically promises only that the United States will not sue under 3008A or H. Those claims could only be brought against Refined. This case for cost recovery is, in fact, for costs that were incurred in the work done to satisfy the consent decree. Well, I suppose the big question here is whether anybody else has agreed with your position that the 1998 settlement had to be a CERCLA-specific settlement. I don't see anything in CERCLA that says that, and really why you've brought this case in a timely manner. We brought the case in a timely manner because we couldn't bring a claim until the claim had accrued. Well, that's right, but under NCR, you've got specific commitments here. This isn't one of those, when it's all over and done with, let's see what still remains to be done kinds of situations. In NCR, the court specifically found that the settlement and resolution provided that there could be no other claims for any further remedial action at the site. All remedial liability was resolved by the settlement, and that was the critical distinction. This case is more reminiscent of a case cited by the court in the Ninth Circuit, Asarco v. Atlantic Richfield, in which the court made the original conclusion that a consent decree under RCRA for corrective action could be asserted under F3B of 113 because it provided for the performance of response actions. But the Ninth Circuit also holds in Asarco that a settlement that includes a covenant not to sue under other statutes are enough to trigger a contribution action under 113 F3B. That was your trigger. You had a covenant not to sue under certain statutes. The whole purpose of all of this structure is to get everybody at the table, get the money on the table, see what's available to clean up these polluted sites, in this instance lead. Your idea is that you can just sit around and wait maybe for 20 years before you bring in potentially responsible contributors. It's not a matter of waiting when the claim has not accrued. Well, it is a matter of waiting. You knew, and indeed as I recall, around 2000 your lawyers were already considering stating a claim for contribution. This was all known. The notice of intent to sue under RCRA that was filed by prior counsel was a mistake. The Megrig case in the Supreme Court has made it abundantly clear that there was no case for cost recovery once a settlement had been reached. It may have been a legal mistake, but I'm focusing more on your client's knowledge that these various other parties are around there. There is a very clear covenant not to sue in the 1998 settlement that seems to close off the theories of relief that were addressed there. The covenant not to sue is the key issue here. As the Ninth Circuit said in Asarco v. Atlantic Richfield, and as this circuit said in Bernstein v. Bankert, you need to look at the substance of the entire settlement and see whether it resolves liability. A covenant not to sue for a claim for which only refined is liable that is then framed about and hung with reservations that say, oh, but by the way, we can bring claims under CERCLA. We can bring claims under RCRA 7003. We can bring claims under any other state or federal law. It's exactly one of the main points that the Ninth Circuit in Asarco looked at and said, this gives you a covenant not to sue, but it's so hemmed about by restrictions and reservations that it doesn't resolve any liability at all. And therefore, we have to turn to the subsequent CERCLA settlements that did give you that protection. The Second Circuit in W.R. Grace v. Sotos, which we've cited too, said, if the government can come in after you've done the work and change it, make you do it again, make you do it differently. And in this case, for example, the final remedy involved both removal of certain contamination and the concentration of other contamination in an on-site containment structure. So the Second Circuit, though, has been all over the block in this area. They have their consolidated Edison case, 2005, saying a settlement's got to resolve CERCLA liability. They've got Niagara-Mohawk, which doesn't seem to go quite that far. Our court in NCR wasn't asking for everything. You have a very clear consideration in this. There's a covenant not to sue on certain things. There's no reason that CERCLA or anything says this needs to mention CERCLA. I just don't see the public policy reason for saying that you can wait 20 years and then bring in this lawsuit. In the NCR case, the covenant not to sue was not to take any action under CERCLA or any state law for any performance of the work. No, I understand it was worded differently. It's not really worded differently, though. It's a critical difference because of the scope of CERCLA liability and its difference. For example, this cost recovery action cannot be brought under the RFRA consent decree. It can only be brought if there's CERCLA liability under 107A. But, you know, CERCLA brings in a lot of potentially responsible parties, but there's never been the slightest doubt that Refined is a potentially responsible party. Refined is right front and center in this whole matter. So it's almost as though you're trying to assert somebody else's rights, it seems to me. Your Honor, I believe that the district court made a similar analysis in which it seems to presume, because of the scope of Superfund liability, that any liability for any response action, the list of response actions under Superfund is deliberately enormous. It's intended to allow the whole range of remedial actions to be considered. But in finding liability, CERCLA 107A is very clear. It does not say anyone who performs any response action is liable to the other parties. It says anyone who performs any response action consistent with the NCP, the National Contingency Plan. That plan is in there to give the government control over the remedy. And it was a deliberate intent of Congress to put it in there. When you look at the National Contingency Plan, when you look at RCRA and CERCLA and this consent decree, what you see is that the government was retaining complete control until they made the final decision in 2014 on what that remedy was. We had no control over what we would be doing at that site to comply with the RCRA closure and corrective action requirements. Now, if you look at the NCP, it says- Is it your position that REFIND is not a PRP for CERCLA? It is clear that REFIND, as the owner of the facility, is itself a PRP under CERCLA. Absolutely. Right. Okay. That's fine. But what is also clear is that in 1998, when this consent decree was entered, NL was not and has not been a commonly liable joint tortfeasor. Well, this is an odd part of your argument to me. If they're not a commonly liable joint tortfeasor, and I'll assume for the moment that you've preserved that argument, although I know there's a debate about that, then I don't know why they would have any obligation to contribute to you either. If they're so far from this whole thing, then it seems to me you've got to take the good with the bad, or the bad with the good, so to speak. The Supreme Court has sort of brought the courts along from the original idea. Originally, the idea was under 107A, no PRP could ever bring a claim under 107A for cost recovery. Well, I understand. And then later on, when they began to move in the direction of, well, PRP's tendering claims, for example, in the Metropolitan Water case in this circuit, but they can only bring it if they're innocent. And then the Supreme Court finally came out years after this decree and said, no, a PRP can bring a 107A action. So at that point, it was very clear that we could bring the action. And it gave them a separate statute of limitations for that claim. In effect, by saying there are distinctly different claims, they're saying, look carefully at the claims, because 107A is our grab bag. 107A is cost recovery, which can happen if somebody voluntarily undertakes remediation. It can happen if their settlement's contribution claims are different. They do overlap to some degree. The courts made that clear, which we also have recognized, of course, as we must. But I don't see where that helps you. To say if NL is not engaged in any common liability, then is it a different site? Why isn't it common? 107A does not assign fault. It assigns liability for response costs when they're incurred. Now, as I say, it's there to make sure at the end of the day, if there is no contribution action, if there is no common liability claim to be brought, that there is nonetheless a claim for cost recovery that can be brought when it accrues, when the work is incurred in a manner that is consistent with the NCP, to make sure that the costs do get assigned appropriately to responsible people. And when that happens, as the Supreme Court has said, they're free to bring a contribution claim and make sure that the allocation that takes place, but we couldn't bring our cost action until we knew what the remedy was many years later and knew that that remedy that EPA had finally picked was consistent with the NCP. I understand that's your position. And if you look at the Third Circuit opinions as well in In re Redding and Aguirre v. AETC, you see that they speak to the fact that the contribution action is a derivative action. The liability needs to be imported from the original action. And in fact, the Third Circuit says in Redding and in Aguirre, refined needs to be, and NL, both need to be parties that EPA could bring their original claim against. Okay, if you want to save a little rebuttal time, you may do that, if you would rather not. May I ask one last point? Of course. The resolution of liability is not addressed. It says you must resolve your liability for some or all of the response costs. But this case involves... Some or all, not all. But it says some or all of the costs and responses get divided up according to geographic distribution, operable units, soil, water. But it says you have to resolve all of the liability for whatever you're resolving. This case, because the EPA reserved their right to file cost recovery actions for all of their oversight work on the work that we agreed to do, they were reserving liability claims and not resolving them for work that was being done under this decree. They did not resolve all the liability. Thank you. Okay, thank you. Mr. Hertz? May it please the Court. Joel Herz on behalf of NL Industries, the appellee. I want to begin where we sort of just took off, which is what ultimately is the kind of threshold question I think you've got in your heads right now, and that is how could we have resolution of liability when there's no circular release? And I think, Your Honor, you touched upon that in part, which is I think we've got to turn back to the statute itself. And what it merely says is that refined must resolve, doesn't say settle, doesn't say permanently settle, doesn't say totally settle, must resolve some of its, not ours, liability for some or all of a response action. Was this a response action? The answer is definitively yes. They alleged that in their complaint. This wasn't merely just a partial response action. The EPA sued them in 1990. The state of Indiana sued them in 1985. The litigation dragged on for, the federal litigation dragged on for over eight years. At the end of eight years, they reached a resolution. And what was that resolution was instead of continuing to fight the government, both the state and the EPA, they said we are going to clean this up. And it wasn't just part cleanup. It wasn't just small cleanup. What the consent decree very clearly says is they're going to clean up the entire site and all contamination. And, in fact, before the consent decree was approved by the district court originally, it ends up it comes back to the same judge who decides our case. There's public notice that goes out to everybody, and it specifically says we are resolving all of the claims set forth in the complaint, and the claims in the complaint were to clean up this site, both the state's complaint and the complaint that was done by the state. But Mr. Collins, of course, is pointing to a reservation of a right to sue, if you will, in the 1998 settlement that both the EPA and IDEM signed up for, basically. So they haven't promised that they'll never bring a lawsuit again. No question there is a reservation here. The question becomes, well, what does that mean? For one thing, for most, is in 1998, when we have the settlement, when they enter into the settlement, it's still an operating lead smelter. Of course the government is not going to give them a full and complete forever release because they're continuing to operate a smelter, and so there's this reservation for future acts, so on and so forth. That doesn't mean, in coming back to what Your Honor was saying earlier, that there wasn't a resolution. And as the district court pointed out, and as it's footnote 12 of the Bernstein case, it's more definitively, what does resolution mean? And resolution means to deal with something in some type of way, either the nature, extent, or amount of its liability, their liability. Did that happen under this 1998 consent decree? The answer is yes, because they agreed to clean it all up. Well, they're arguing that this is more like Bernstein than NCR, essentially. I understand they're arguing that there's enough hanging out there that they didn't have enough legal certainty until a much, much later time. And so three things with that. One is this is not like Bernstein because, as I'm trusting you're aware, we have the 2012 Bernstein opinion. EPA then complains and files an amicus brief with this court saying, wait a second, Seventh Circuit, you can't do this. You're going to ruin our ability to settle. We then get the amended opinion in Bernstein in 2013, and what that says addressing EPA's concerns is if there is an immediately effective covenant not to suit, which we have here, then that is enough. And then the following opinion, your opinion in NCR, then confirms in NCR we have the immediately effective covenant not to sue, and clearly that is enough. And the district court followed that opinion one. I don't want to call it a trilogy because two of the opinions come in the same case, but that Bernstein one, Bernstein two, and then NCR. And so this does follow clearly the corrected opinion or the amended opinion in what I'll call Bernstein two and the NCR opinion there. So as far as you're concerned, the three years for a 113 action ran from 1998? No question. From the date, I'm pretty sure I've got the date, August 30, 1998. That is the date they enter into disappearing for a second, but I'm coming back. That is the date that they enter into it. What the statute says, there's a trigger date. It's from the date of the entry of the settlement or the consent decree in the court. That is the date, and that's the date it runs from. And so let's think forward for a second. The three of you are going to have to write an opinion here. If at the end of the day their argument is accepted, and what his argument, and by the way, they alleged in their complaint twice. They have a separate count. They alleged a contribution claim. And also in their whereas clause, they demanded in their prayer for relief, they said we are entitled to contribution and we're entitled to contribution for a declaratory judgment for everything that's paid out in the future. If their position is bought here, which I don't think it should, I don't think this is even a close case, where do we end up with? You would have to buy their argument that the claim has not yet accrued. And we have every day in the week in these what I call superfund cases, cases where the site is cleaned up in some manner, but there's ongoing O&M that goes on sometimes forever. I've had sites where it's a perpetual cleanup that always needs to pump and treat. And so if you buy this theory, then we will never ever have a situation where anybody could have, unless every grain is pulled out of the ground, you're always going to have this O&M. And so the argument will be from the other side is wait, your claim has not accrued because there's still more cleanup to be done. You're talking, I'm not familiar with your shorthand, just some sort of continued maintenance claim. Exactly, continued maintenance. And so more so, the Congress set that deadline in the 113 statute of limitations saying the date begins to run from the date of the settlement, and that ties back to 113 F3B, which says from the date of resolution in a settlement and in an administrative decree. So did this 1998 settlement include a covenant, not from EPA, but from IDEM not to sue under CERCLA? It looks like it might have. And that's exactly our point, which is if you go back and you read the IDEM complaint, the State of Indiana complaint, it specifically says we're demanding that you clean this thing up entirely just like the EPA did. There's two different covenants not to sue in the 1998 consent decree. The federal government unquestionably, we're not disputing it, reserved a CERCLA reservation, and it sounds like you're fully familiar with the Asarco case, the Chicago, the Trinity Bridge case. I won't revisit them. I think you've got it spot on as to what you said with regard to the Second Circuit, which is they seem to be in one direction, but when you read the Niagara Mohawk case in 2012 in the footnote, when EPA once again puts in their brief, they say, boy, it seems like there's a significant vitality to what EPA is saying, and it seems like they're agreeing that they were incorrect with the earlier consolidated Edison opinion. But when you come back to the question, which is IDEM sues, IDEM's covenant not to sue releases all claims set forth in their complaint except, and it leaves out their state statute, and question whether that's a baby CERCLA statute or what it might be, but one thing they certainly don't do and never do is reserve any federal CERCLA claim. And so coming back to the language of 113 F3B, it is resolve, refined, its liability for some or all, we certainly have some here, I don't think anybody can argue with regard to that, with either the United States, EPA, or B, the state of, in this case, Indiana. Let's assume for argument's sake that they are right again about you need a CERCLA release in your settlement agreement or your consent decree. Here at minimum, and this is what we pointed out in the papers and what we pointed out to the district court, which they adopted what we had to say, is there is a CERCLA release. There isn't any reservation by the state of Indiana for CERCLA rights. And so we've got it in both ways. Unless there's more questions on that point, even if I'm wrong on point one that they allege a contribution claim, now claim they don't have one or claim that it's premature even after they alleged it, the district court rules predicated based on their complaint and their argument that they did have one at some point. Let's assume that I'm wrong on needing a CERCLA covenant not to sue from EPA. Let's assume that you and I are both wrong, that there wasn't a CERCLA covenant not to sue from the state. I still win for another reason, which is their 107 claim, which wasn't decided by the court below, but I think this gives you more than adequate reason to affirm the district court, is they're way too late on the 107 claim too. They had to come to the court within six years of the initiation of physical construction of the remedy. It's alleged in their complaint, and it's in the administrative record that the district court had below, where they demolished all the buildings. They removed all the waste piles. They built the ditches, and this is all in their own pleadings and all their sections. So even if you don't follow me on my first three points, I still win anyway because their 107 claim was just way, way, way too late. So their concern in part seems to be that EPA could keep moving the goalposts, that you did this work, and now actually we want more work, and now we want even more work. And so there isn't the kind of legal certainty from this settlement that they would like to see. And so on there, there's two points. One of them was addressed by the district court, I think, effectively and correctly. One is that's not what Congress said. Congress said, and your point at the very beginning of what you addressed is, we want to bring the parties to the table. We want to get these things settled quickly. You can't just wait forever. We don't admit we have any liability, but certainly them sitting for 20 years, most of our employees are now dead. How do we defend this case? But that's a different issue, which is coming forward, what the district court says, if there's an uncertainty, you would have the right for declaratory judgment. And they make the point of under 113 G2, it specifically says that the court shall issue a declaratory judgment for future costs, and that's missing under 113 G3. And the short answer is, I think what Congress was saying there is it's mandatory if there's cost recovery, but we still have the Declaratory Judgments Act, which is a discretionary act, and what the judge below said is, look, you would still have a right under the Declaratory Judgments Act to bring your claim, and that's the solvable. The second answer to your question or second part is, well, that's just what Congress said, which is we set the trigger. The trigger is the settlement. What Congress didn't say when this was enacted in 1986 is the contribution runs from the date you complete the cleanup. It didn't say from the date all costs are known. And, indeed, what the court said in Banker, footnote 12 and otherwise, is resolve means some decision with some piece of finality, which I think we have here, no question, either the nature, and we knew what the nature here was, they agreed to clean it up, the extent or the amount, and that's just the reality of these environmental cases. This wasn't a case where they said, well, we'll agree to clean up a little bit, and then we'll sit down with you in two or three years after we clean up a little bit. The complaint alleged you need to clean up everything, and the consent decree, they agreed no matter what EPA ordered, and that's in here. We will clean it up. And so as a matter of practicality, coming back to the circle argument, which is if they did what they're supposed to do under the consent decree, which was binding on them here, there was nothing more to clean up. And, in fact, if you go to the site today and look at it, it's cleaned. It's a grass field. I'm not sure if they've sold it or not, but I visited it myself. There's nothing there anymore. It's all knocked down. It's cleaned up, and it's essentially completed. Unless there are further questions, I appreciate the time and the consideration in this case. All right, thank you. Anything further, Mr. Collins? Just to stress the point again, everything was not resolved. The United States government retained the right to seek oversight costs for all of the work that was being done. That's clear under the terms of paragraph 49 of the consent decree, and yet they reserved those rights under the reservation of ability to sue under Superfund. Every single thing that we did was being done under government supervision and potentially the subject of a subsequent liability claim for costs under Superfund. There was not right resolution. Although I appreciate Mr. Hertz's attempt to conflate the term finality, it's abundantly clear in Bernstein v. Banker that finality means finality. There must be finality as to some part of it. In this case, there is nothing that we have done that was not subject to an unresolved oversight cost claim of the United States EPA. Nothing that we did under that decree was not subject to a liability claim which was not resolved by that consent decree. There was no finality. With respect to his arguments that it must have been a complete cleanup and in effect his statement that the reservation of rights under Superfund doesn't really mean anything, then why did the government put it in? Isn't it the obligation to consider all of the terms? That's what the Bernstein court said. You must look at all of the terms. If the government negotiated to reserve all of these abilities, they reserved them. The reservation means that whether the work was immediately effective or not, they were maintaining the ability to bring claims for oversight costs and any other remedy that they wanted in the future. The Sixth Circuit decision in RSRB Commercial Medals says the liability release must be complete. NCR says the same thing. This was not a settlement that finally resolved liability. Thank you. Thank you very much. Thanks to both counsel. We will take the case under advisement. All right.